[Civ. No. 19834. First Dist., Div. Three. Oct. 4, 1962.]

CON S. SHEA, as Administrator, etc., Plaintiff and Respondent, v. DAVID A. PAUL et al., Defendants and Appellants.

Raymond H. Levy for Defendants and Appellants.

Robert H. Andresen for Plaintiff and Respondent.

DEVINE, J.—This action was commenced by Ruth Guthrie, now deceased, to establish a trust in a certain lot of real

property in Mill Valley, and to compel the defendants to convey title to plaintiff. Defendant David A. Paul is a building contractor who had transactions with plaintiff, and record title to the lot has been in his name and that of the deceased plaintiff since the date of its purchase in 1954. (Mr. Paul's wife is a defendant but her joinder is merely formal, and reference herein is made to Mr. Paul only, as defendant.) The action was commenced by Ruth Guthrie, a single woman, on December 9, 1958. Plaintiff Ruth Guthrie died on March 17, 1959, and the action has been carried on by the administrator of her estate.

The complaint, which has remained unaltered except for the substitution of the administrator, alleges that the entire purchase price of the lot, $5,000, was paid by plaintiff out of her own money solely and none other, and that it never was the intention of plaintiff that any interest be vested in the defendant, that plaintiff demanded of defendant that he convey his legal or record interest in the title and that he refused. Although defendant in his original answer, which was unverified, set forth a somewhat different theory of defense than had been contained in his pretrial statement, his contentions as asserted in the statement were adopted in the pretrial order. They are: that he, Paul, a licensed contractor, did certain work upon other properties for Miss Guthrie, that he obtained a modernization loan for this work, part of the proceeds of which he contributed toward the purchase price of the subject lot, and that he did other work on the subject lot, for which he was not paid, and that as a result title was placed in both names and he became part owner of the property, having a 73 per cent interest therein, or that, at the least, the title was held in both names as security for indebtedness due to Paul.

The court found that the entire purchase price was paid by Miss Guthrie, that she did not intend any vesting of title in Paul, and that she is entitled to conveyance; but also found that defendant is entitled to the sum of $594 for services in the improvement of the subject property, for moneys advanced and for payment of taxes, and ordered payment of said sum upon delivery of the deed.

Ruth Guthrie having died prior to the trial, her personal representative, as substitute plaintiff, relied in his case in chief upon receipts to show payment of the purchase price of $5,000, plus $100 closing costs, and to letters written by Miss Guthrie to defendant to show demand. The receipts are

five in number, two being issued to Miss Guthrie and signed by defendant Paul, each in the amount of $1,000, and three issued by a title insurance company in the sums of $1,000, $1,600 and $500, the receipts being made out to Miss Guthrie. The two letters were addressed to Mr. Paul some three years after the property was purchased, and in each of them Miss Guthrie called upon defendant to clear her title to the lot. Plaintiff relies on the receipts and letters to sustain the judgment.

Appellant made an offer of proof that sometime in 1956 Miss Guthrie showed him a letter which was in the nature of an holographic will written by Miss Guthrie and disposing of the property to defendant. The offer was not to establish the document as a lost will, but to indicate the frame of mind of Miss Guthrie. The offer was rejected.

Defendant testified that he is a licensed contractor but not a licensed architect, and he admitted that he did not disclose to Miss Guthrie the fact that he is not a licensed architect. He testified that he undertook two operations for Miss Guthrie. The first was work on a dwelling in Mill Valley, and the second, the preparation of plans and the doing of preliminary work on the subject lot. After he had commenced the latter work he was informed by Dr. Gertrude Jones, the owner of the property, that Miss Guthrie had not made payment of the purchase price and had not received a deed. Thereupon, arrangements were made for the payment of the price in installments. Mr. Paul testified that the first $1,000 payment was delivered to him by Miss Guthrie for deposit with the title insurance company for the account of Dr. Jones, and he signed a receipt to Miss Guthrie. As to the second $1,000, for which he also gave a receipt to Miss Guthrie, he testified that actually the funds were not supplied to him by Miss Guthrie and that, although he gave her a receipt and did not demand its return, he had borrowed the money from a third person. Although this was the subject of spirited contest at the trial, defendant did not produce the third person, and although he testified that he had repaid the third person, he testified that the whole dealing was in cash, and he was unable to produce any cancelled check. He testified that he had given the third person a receipt but that he had not demanded return thereof, nor had he obtained any receipt for the repayment. He further testified that a modernization loan had been obtained for the work performed at 278 Summit Avenue, Mill Valley, in amount $2,500, and that he had paid $1,200 thereof to the

title company for the purchase of the subject lot, although the title company receipt was made in favor of Miss Guthrie. Finally, he testified to certain relatively minor work done on the subject lot and to payment made for drawing of plans to one Anderson, who, like defendant himself, is not a licensed architect. The allowance of the $594, mentioned above, covers items of work claimed to have been done on the subject property, with the exception of the plans. Under interrogation by the court, defendant virtually conceded that his only claim to the property was by way of security, and not by way of ownership.

Plaintiff's claim of resulting trust is based upon section 853 of the Civil Code, which reads: ''When a transfer of real *property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made.*'' Since all of the receipts were made out to Miss Guthrie, there was substantial evidence to support the conclusion that a trust existed. The claim asserted by defendant at the time of pretrial, that he had an interest in the property other than by way of security, failed completely by his own testimony, referred to above.

At this point, we observe that there was no error in the admission of the two letters sent by Miss Guthrie to Paul. Plaintiff offered them not for the truth of anything said therein, but simply to show demand. This would tend to negative intent of plaintiff to vest title in the defendant, and the letters were admissible. (*Wilcox* v. *Salomone,* 118 Cal. App.2d 704, 711, 712 [258 P.2d 845].)

Nor was there error in rejecting the offer of proof of the missing ''holographic document,'' as appellant called it. There was no offer of proof as to the date of the making of this document, so it could not possibly show intent on the part of Miss Guthrie at the time the property was placed in the names of both parties, in 1954; and if it was shown to Paul, as he testified it was, in 1956, the document would not negative the demand made by Miss Guthrie in 1957. The whole offer was of no substance.

The receipts to Miss Guthrie having shown, prima facie, that she paid the entire purchase price, it remains for us to discuss whether, as defendant contends, he is entitled to credit in excess of the amount allowed by the court, and we consider this in two parts: first, claimed credits on the purchase price, and, second, claimed credit for fee for plans. As

to the purchase price, there are two items to be considered. The first is the $1,000 payment claimed by Paul to have been made by him despite the fact that he issued the receipt to Miss Guthrie and never retrieved it, and had obtained the funds by the loan described above. This asserted transaction was so unbusinesslike, at best, that the court was entirely free to discredit it. As to the $1,200 payment, the receipt from the title company was made in favor of Miss Guthrie. The check paid into the title company for the benefit of the grantor, Dr. Jones, was Mr. Paul's personal check. He testified that the source of this $1,200 was the modernization loan. It is the position of respondent that the modernization loan of $2,500 having been obtained, substantially less than this figure was required to perform the work, and that the balance of the proceeds of the loan made to Miss Guthrie was refunded to her by Paul in the form of his check in the amount of $1,200. The receipt issued by the title company to Miss Guthrie is substantial evidence to support this contention. Defendant had the opportunity to offer proof of the cost of the work, but instead of offering such proof, he objected to cross-examination on the subject, and presented cancelled checks which show payments of less than $500. Although he testified to other expenses, he did not support his testimony with records. His application for building permit gave the total cost as $500. We need only say that the trial court was not obliged to accept the testimony of Mr. Paul against the receipt in favor of Miss Guthrie.

The court was correct in disallowing the fee for preparation of building plans, because Paul is not licensed as an architect, and had not informed Miss Guthrie of this fact. (Bus. & Prof. Code, §§ 5536, 5537; *Force* v. *Hart,* 209 Cal. 600, 605 [289 P. 828] ; *Baer* v. *Tippett,* 34 Cal.App.2d 33 [92 P.2d 1028].) Appellant's contention that he need not have shown licensing because the plans were for his own building, falls with the determination that the property was not his but decedent's. Appellant's point that the plans were merely preliminary is defeated by the plans themselves, which were admitted in evidence and which show themselves to be detailed plans.

Finally, we reject appellant's contention that a stipulation by the parties, made at the end of the trial, that the court should have full authority to declare all the rights of the parties in the property, causes a widening of the issues beyond anything contained in the answer, pretrial statement

of defendant, or pretrial conference order, to include the now asserted defenses of laches and the statute of limitations. Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.